THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS DONNELLY, <br> On behalf of himself and others <br> similarly situated, <br> <br> Plaintiff, <br> v. <br> <br> EQUITYEXPERTS.ORG, LLC <br> <br> <br> Defendant. | Case No. 4:13-CV-10017-TGB-RSW |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

**I.     STATEMENT OF RELIEF REQUESTED**

This is a putative class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiff Thomas Donnelly ("Plaintiff") respectfully requests that this Court certify this action as a class action under Fed. R. Civ. P. 23, appoint him as class representative, and appoint his counsel as class counsel. Plaintiff submits that the following Class and Subclass[1] should be certified:

> **CLASS**: All persons located in the State of Michigan who, between January 4, 2012 and January 3, 2013, were sent an initial written communication by EquityExperts.org, LLC in connection with an attempt to collect a consumer debt.
>
> **SUBCLASS**: All persons in the FDCPA Class who paid monies to EquityExperts.org, LLC as a result of fees charged by EquityExperts.org, LLC for its debt collection efforts.

---

[1] The Class and Subclass are referred to collectively as "the Classes." Excluded from the Classes are Defendant EquityExperts.org, LLC ("Defendant" or "EquityExperts"), its officers and directors, their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

1

## II.     SUMMARY OF THE ARGUMENT

During the one-year class period, EquityExperts sent 413 misleading form letters, containing materially identical terms, to Michigan consumers in an attempt to collect allegedly delinquent association dues. At the same time, EquityExperts illegally charged consumers for its debt collection efforts—including a $95 fee for the preparation of the initial debt collection letter and $395 to file a lien on a consumer's property—and secured payment of its fees through liens and threats of foreclosure.

EquityExperts did so through its multi-step debt collection program, which seeks to collect past due association dues and assessments while lining Defendant's pockets. In short, EquityExperts contracts with various homeowners' associations throughout Michigan to collect past due assessments. Defendant does so by promising to take on collection efforts at no cost to the association. That is, rather than keeping a percentage of the past-due assessments it collects, EquityExperts charges exorbitant collection fees directly to Michigan consumers, and without any legal basis to do so. To ensure that it collects its fees, EquityExperts places liens on consumers' homes, which act to exert tremendous pressure on homeowners to either pay up or risk losing their houses to foreclosure. The end result is an alleged debt that, because it now includes EquityExperts' fees, often dwarfs the original past-due homeowners' assessments. Defendant's debt collection efforts undisputedly run afoul of the FDCPA because (1) its initial debt collection letters fail to comport with the requirement of 15 U.S.C. § 1692g and (2) Defendant charges and collects fees from consumers for its debt collection efforts, when such fees are not authorized by law or contract, in violation of 15 U.S.C. §1692f(1).

This case should be certified as a class action. Discussed *infra*, Plaintiff's claims are based on the same form letter, containing the same material provisions and disclosures, sent by

Defendant *en masse* to Michigan residents. Because Plaintiff and each member of the proposed Classes received materially identical correspondence from Defendant, Plaintiff satisfies the numerosity, commonality, and typicality elements of Rule 23(a). Likewise, Defendant charged standardized fees as part of its debt collection efforts. In addition, the members of the proposed Classes are readily ascertainable, in that Defendant's records detail which Michigan consumers were sent initial debt collection letters, and who submitted payment as a result.

Plaintiff's claims likewise satisfy the predominance and superiority requirements of Rule 23(b). Moreover, Plaintiff is committed to this case and is a more than adequate class representative. For these reasons, Plaintiff respectfully requests that this Court grant his motion for class certification, appoint him as class representative, and appoint his counsel as class counsel.

## III.  STATEMENT OF FACTS

### A.  EquityExperts' Debt Collection Practices

EquityExperts utilizes a five-step process to collect debts on behalf of its association clients. As touted on its web site, EquityExperts first notifies an alleged debtor that his debt has been referred to a collection agency and that if full payment is not made within 30 days, a lien will be filed on the consumer's home.[2] At all relevant times, EquityExperts charged consumers $95 for sending this initial collection letter. *See* Deposition Transcript of EquityExperts.org, LLC, taken pursuant to Fed. R. Civ. P. 30(b)(6) ("EquityExperts Dep."), at 20.[3] (Q. So in other words, in 2012 for every initial debt collection letter that EquityExperts sent to a consumer in Michigan, that consumer was charged $95 for the letter? A. Yes.). If full payment was not made

---

[2] *See* http://www.equityexperts.org/faq-page#n34, a true and correct copy of which, dated Feb. 11, 2014, is attached hereto as Exhibit A.

[3] The relevant portions of the EquityExperts Dep. are attached hereto as Exhibit B.

within 30 days, EquityExperts would then file a lien on the consumer's home, and charge the consumer $395 for doing so. Ex. A; EquityExperts Dep. at 44 (Q. Going back to 2012, was the same $395 charge charged to all people in Michigan from whom EquityExperts was attempting to collect a debt where that service, the lien drafted service was provided? A. Yes.).

At that point, if the consumer did not resolve his debt—and EquityExperts' resulting fees—the consumer's file would move to the "constant contact" phase, whereby EquityExperts would repeatedly call and send letters to the consumer in an attempt to collect the alleged debt. Ex. A; EquityExperts Dep. at 82-85. At the same time, EquityExperts would tack on an additional $750 fee. EquityExperts Dep. at 82, 84. Thereafter, if the outstanding debt still was not resolved, EquityExperts would notify the consumer of its intent to foreclose on the consumer's home and move forward with foreclosure by advertisement. Ex. A.

### B. The Initial Debt Collection Letter to Plaintiff

On or about May 16, 2012, EquityExperts mailed to Plaintiff an initial debt collection letter (the "Initial Letter"). EquityExperts Dep. at 18; *see also* Declaration of Thomas Donnelly in Support of Motion for Class Certification at ¶3, a true and correct copy of which is attached hereto as Exhibit C ("Donnelly Dec."). A true and correct copy of the Initial Letter sent to Plaintiff is attached hereto as Exhibit D. EquityExperts mailed materially identical letters to 413 individuals in Michigan for the one-year time period between January 4, 2012 and January 3, 2013 (the "Class Period").[4]

The Initial Letter stated, in pertinent part:

> This letter is to inform you that your delinquent account for association assessments for your property at 296 Arusha within The Shores at Stonegate

---

[4] *See* Defendant's Response to Plaintiff's Discovery Regarding Numerosity and Net Worth at 1, a true and correct copy of which is attached hereto as Exhibit E.

4

> Association has been turned over to EquityExperts.org, LLC for collections. Should you fail to promptly pay all monies due to the association, including the costs of collections, a lien will be recorded to secure payment of your delinquencies. Please contact our office immediately in order to arrange for payment and prevent further action. We will work to accommodate your financial condition as much as possible.
>
> Please note that a lien is a public record that can have a significant impact on your credit rating. Furthermore, if you do not pay promptly additional collection assessments will be added to your account and additional action may be taken against your property, including foreclosure.
>
> Current Balance: **$828.00**.[5]
>
> If you do not pay within 30 days, balance will be at least: **$1,223.00**

Ex. D.

Immediately following the threats of a lien and possible foreclosure, the Initial Letter stated:

> You have thirty (30) days to dispute this debt. If you fail to contact our office to contest this in writing within that time, the obligation is considered valid, and the collection process will proceed. If you submit a written dispute within that period, we will obtain verification of the debt and mail it to you.

Ex. D. Finally, the payment coupon included with the Initial Letter stated that payment was due "Immediately." *Id*.

The Initial Letter sent to Plaintiff was based on the same template used by Defendant throughout 2012. EquityExperts Dep. at 21. Indeed, other than consumer-specific information such as the consumer's name, address, the name of the original creditor, and the amount owed, EquityExperts used the same language in all initial debt collection letters sent to Michigan consumers during the Class Period. *Id.* at 22-24. That is, EquityExperts informed all members of the proposed Class, through its standardized initial written communications, that it would file

---

[5] While not directly relevant to the instant motion, the amount demanded from Plaintiff overstated his alleged debt, and thus forms a separate violation of the FDCPA. EquityExperts Dep. at 42, 46.

a lien if full payment was not made within 30 days, that "additional collection assessments will be added to your account and additional action may be taken against your property, including foreclosure." In addition, EquityExperts informed all members of the proposed Class that if they did not pay in full within 30 days, their balance would increase by $395, which is the amount charged by EquityExperts to place a lien on the consumer's property. Finally, EquityExperts failed to include the proper disclosures required by 15 U.S.C. § 1692g in each of the initial collection letters it sent to Michigan consumers during the Class Period.[6]

### C. EquityExperts Charges Fees Incident to the Collection of Debt

During the Class Period, EquityExperts charged each consumer $95 for its initial debt collection letter. It also charged $395 to place a lien on a consumer's property, and $750 to engage in "constant contact" with the consumer. EquityExperts charged Plaintiff both the $95 initial letter fee and the $395 lien fee. EquityExperts Dep. at 58 (Q. You said there was $490 in fees charged to Mr. Donnelly? A. Yes. That represents $395 that was charged at the lien stage and then $95 that was charged at the initial stage.). As noted in Defendant's September 18, 2012 letter to Plaintiff, attached hereto as Exhibit E, these fees were "paid in full" by Plaintiff.

Because there is no dispute that Plaintiff received the Initial Letter, was charged fees by EquityExperts for its collection efforts and paid said fees, there is no question that Plaintiff is a member of the Class and Subclass he seeks to represent.

---

[6] For example, the Initial Letter violated 15 U.S.C. § 1692g(a) by failing to notify Plaintiff: (1) that he must dispute in writing within thirty days of *receipt* of the letter, (2) that he may dispute any portion of the debt, (3) that if he fails to dispute in writing, *only* Defendant will consider the debt valid, and (4) that if Plaintiff requests in writing within thirty days of receipt of the letter the name and address of the original creditor, Defendant must provide him that information. The Initial Letter also violated 15 U.S.C. § 1692g because, by demanding payment in full "immediately" and by threatening to place a lien on a consumer's home if full payment is not made within 30 days, EquityExperts overshadowed and rendered ineffective the notices required by 15 U.S.C. § 1692g(a).

6

### D. Members of the Class and Subclass Can Be Ascertained Through Defendant's Records

Identifying each member of the Class and Subclass will not present a challenge:

Q. Going then just to the account by account look, it's correct then that EquityExperts can determine who it sent an initial debt collection letter in the form of Exhibit 2 in 2012, correct?

A. Yes.

Q. Will it have the names, the full names of each person that it sent an initial debt collection letter in 2012?

A. Yes.

Q. What other demographic information does EquityExperts have on these individuals?

A. Their names and their property address and then sometimes we have contacts such as phone numbers or e-mails.

Q. Does EquityExperts have a record of the amount alleged to be owed by each person?

A. Yes, that would be contained in our record of the initial letter that we would send out.

Q. Would EquityExperts also have the amount of money, if any, that each person paid?

A. Yes.

Q. Would EquityExperts be able to tell or be able to determine for each person who received an initial debt collection letter in 2012 whether each person paid the fees charged by EquityExperts?

A. Yes.

Q. In addition to showing whether each such person paid, could EquityExperts determine how much each person paid?

A. Yes.

Q. Could EquityExperts determine how much that was paid went to fees from EquityExperts versus past due homeowner's assessments?

A. Yes.

EquityExperts Dep. at 70-71. Thus, there will be no difficulty identifying each member of the proposed Class and Subclass.

## IV. MEMORANDUM OF LAW

### A. Legal Standard Under Fed. R. Civ. P. 23

To attain certification of the Class and Subclass, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), he must demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *See McDonald v. Asset Acceptance, LLC*, --- F.R.D. ----, 2013 WL 4028947, at *2 (E.D. Mich. Aug. 7, 2013) (certifying FDCPA class).[7]

"A district court may not inquire into the merits of the class representatives' underlying claims, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), but should accept the complaint's allegations as true." *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 81 Fed.Appx. 550, 555 (6th Cir. 2003). Nevertheless, a district court should conduct a "rigorous analysis" to ensure that the elements of Fed. R. Civ. P. 23 are met. *Passa v. City of Columbus*, 266 F.R.D. 197, 202 (S.D. Ohio 2010) (certifying FDCPA claims). In certifying a class, the Court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits. Fed. R. Civ. P. 23(c)(1)–(4); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

### B. The FDCPA is Well-Suited For Class Action Treatment

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. 15 U.S.C. §1692 *et seq*. The FDCPA imposes civil

---

[7] Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.").

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from

violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. National Fin. Services, Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action filed under the FDCPA. *See* 15 U.S.C. §1692k(a),(b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen and Assoc., Inc.*, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Sixth Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992). The basic purpose of the objective, least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers. As the Sixth Circuit explained:

> Courts must view any alleged violation through the lens of the "least sophisticated consumer,"—the usual objective legal standard in consumer protection cases. The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes. The standard thus serves a dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.

*Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed.Appx. 24, 28 (6th Cir. 2007). Furthermore, because the FDCPA is a strict liability statute, it is not necessary to demonstrate that EquityExperts acted with any ill intent. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages.").

Because of their overwhelmingly common questions of fact and law, numerous district courts, including those in this Circuit, have certified class actions, like here, based on form letters in the debt collection context. *See, e.g., Mann v. Acclaim Fin. Services*, 232 F.R.D. 278 (S.D. Ohio 2003); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271 (W.D. Mich. 2001); *see also Sharf v. Fin. Asset Resolution, LLC*, --- F.R.D. ----, 2014 WL 171482 (S.D. Fla. Jan. 16, 2014); *Klewinowski v. MFP, Inc.*, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Services, Inc.*, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr*, P.A., 222 F.R.D. 692 (S.D. Fla. 2004); *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99 (W.D. Va. 2000); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999). This Court should do the same.

### C. Plaintiff Satisfies the Requirements of Rule 23(a)

A plaintiff seeking class certification must establish each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Sharf*, 2014 WL 171482, at *2.

#### a. Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained, "[t]here is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d

565, 570 (6th Cir. 2004) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3:5, at 243-45 (4th ed.2002)); *see also Crawley v. Ahmed*, 2009 WL 1384147, at *10 (E.D. Mich. May 14, 2009) (certifying class action).

Here, EquityExperts sent letters materially identical to the Initial Letter to 413 individuals in Michigan for the one-year time period between January 4, 2012 and January 3, 2013. Ex. E. And EquityExperts charged each of those 413 consumers, at minimum, $95 for its collection efforts. EquityExperts Dep. at 20. Thus, there is no doubt that Plaintiff has satisfied the numerosity requirement as there are "more than several hundred" members of the proposed Class and Subclass. *See Bacon*, 370 F.3d at 570. Moreover, there will be no difficulty ascertaining who the members of the Class and Subclass are as EquityExperts has records identifying which Michigan consumers were sent the Initial Letter and, of those, who responded with payments that included EquityExperts' fees. EquityExperts Dep. at 70-71.

### b. Commonality

"Commonality requires at least one issue common to all members of the class, but does not require that all factual and legal questions be common." *Agan*, 222 F.R.D. at 697. The commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members." *Id*. ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter.").

The questions of fact and law at issue here are entirely common. The claims asserted by Plaintiff and the Classes originate from the same conduct, practice, and procedure, on the part of Defendant, namely the issuance of the form Initial Letter and the charging of standardized fees incident to the collection of debt. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. For these

12

reasons, claims brought as a result of a form debt collection letter are routinely certified as class actions. *See Gradisher*, 203 F.R.D. at 277 ("Whether the notices or letters contained or were required to contain the debt validation notice required under § 1692g(a) is one example of a common question."); *Mann*, 232 F.R.D. at 284 ("In FDCPA cases, where plaintiffs have received similar debt collection letters ... courts have found common questions of law or fact sufficient to certify the class."); *Swanson*, 186 F.R.D. at 668 ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 (finding commonality where "[a]ll received the identical or substantially similar letter from Defendant.").

### c. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiff and the members of the Classes suffered from a common practice employed by Defendant through its issuance of its standardized Initial Letters. Thus, Plaintiff possesses the same interests and has suffered the same injuries as each class member and asserts identical claims and seeks identical relief on behalf of the unnamed class members. As a result, Plaintiff's claims are typical of those of the Class and Subclass he seeks to represent. *See Mann*, 232 F.R.D. at 284-285 ("Plaintiff alleges, *inter alia,* that the language in [Defendant's] initial communication violated both the FDCPA and the OCSPA. As was discussed *supra,* the class members' claims arise from the very same course of conduct by [Defendant]. While the extent of a class member's particular injuries may differ, because they all received communications containing the same language, the type of injury will generally be the same. Therefore, this Court concludes that the typicality element of Rule 23(a)(3) has been satisfied."); *Agan,* 222 F.R.D. at 698 ("Parties seeking class certification

have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.").

### d. Adequacy of Representation

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

As set forth above, Plaintiff's claims are aligned with the claims of the members of the Class and Subclass. Plaintiff also is committed to vigorously pursuing the members' claims with their best interests in mind. Donnelly Dec. at ¶¶6-11. Plaintiff will fairly and adequately protect the interests of the Classes and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Classes. *Id.* As demonstrated in his declaration, Plaintiff stands ready, willing and prepared to serve this Court and the proposed Classes, as he has done throughout this litigation. *See* Ex. C.

Plaintiff has retained the services of counsel who are experienced in complex class action litigation, will adequately prosecute this action, and will protect all absent Class members. Plaintiff's counsel, Greenwald Davidson PLLC, has ample experience representing plaintiffs in

consumer class actions, and is well-equipped to handle the instant litigation. *See, e.g., Sharf*, 2014 WL 171482, at *4 (appointing Greenwald Davidson as class counsel and finding that "Plaintiff and his counsel are committed to vigorously pursuing the claims of the class members. Plaintiff's interests are also aligned with those of the class members and his selected counsel has sufficient experience representing plaintiffs in consumer class actions."); *Hunter v. Nicholas Financial Corp.*, No. 0:13-cv-61126-DMM, Doc. 29 (S.D. Fla. Jan. 13, 2014) (appointing Greenwald Davidson as Class Counsel and preliminarily certifying a class of approximately 1,300 individuals allegedly injured by a creditor's violations of the Electronic Fund Transfer Act); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392 (D. Mass. 2011) (counsel Michael L. Greenwald member of litigation team appointed class counsel); *City of Ann Arbor Employees' Retirement System v. Sonoco Products Co.*, 270 F.R.D. 247, 253 (D.S.C. 2010) (same); *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83 (E.D.N.C. 2009) (same); *In Re NationsRent Rental Fee Litig.*, 2009 WL 636188, at *11 (S.D. Fla. Feb. 24, 2009) (same). As a result, Plaintiff satisfies Fed. R. Civ. P. 23(a)(4).

### e. Plaintiff's Counsel Should Be Appointed Class Counsel

Plaintiff and proposed Class Counsel, Greenwald Davidson PLLC, will vigorously prosecute this action. In addition to satisfying the adequacy prong of Rule 23(a)(4), Greenwald Davidson also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel. *See Sharf*, 2014 WL 171482, at *4.

### D. Plaintiff Satisfies the Requirements of Rule 23(b)

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Rule 23(b)(3) requires that questions of law or fact

common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *McDonald*, 2013 WL 4028947, at *6 ("In addition, variations of defenses and damages do not destroy predominance when liability may be determined on a class-wide basis."). The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, common issues necessarily predominate because Plaintiff's claims are all based on the same form Initial Letter sent by Defendant to all members of the proposed Class, and the same standardized fees charged by EquityExperts for its debt collection services. For this reason, courts routinely find that claims based on form debt collection letters satisfy the predominance requirement of Rule 23(b)(3). *See Sharf*, 2014 WL 171482, at *4 ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA [], common issues predominate."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is whether the "YOUR CREDITORS" letter violates the FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that

16

monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"); *Fuller*, 197 F.R.D. at 701-02 ("The essential common factual link between all of the prospective class members is the letters sent by Defendants. Plaintiffs' basis for the claim is the language and content of the letters.").

As Judge Thompson explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.[8]

---

[8] While each Subclass member may have a differing amount of actual damages, such variation does not defeat certification. *McDonald*, 2013 WL 4028947, at *6 ("The general rule is that variations of damages among class members do not necessarily destroy predominance. Because the central issue in this matter can be determined on a class-wide basis, Plaintiffs have satisfied the predominance requirement."). In any event, determining actual damages will be a simple task as Defendant's records identify the fees paid by each member of the Subclass to EquityExperts. EquityExperts Dep. at 71.

### 2. Superiority

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Because the claims in this case all arise from the same form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members.

Here, no one member of the Classes that Plaintiff seeks to represent has an interest in controlling the prosecution of the action because the claims of all members of the Class and Subclass are identical as the allegations involve standardized conduct, and each Class member is likely to have suffered relatively small statutory damages. In certifying FDCPA claims, Judge Battani explained:

> Here, individual class members are likely to be unaware of any violation. There is evidence that the class potentially consists of [many] members. In addition, estimated statutory damages for violations of the FDCPA are likely to be fairly small. Therefore, Plaintiffs demonstrated that a class action is the superior method of adjudication in this case.

*McDonald*, 2013 WL 4028947, at *6.

For these reasons, a class action is the superior method to adjudicate this controversy. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part,

"Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of $1,000."). A class action, therefore, is the superior method of adjudicating this controversy.

## V. CONCLUSION

Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Class Certification and Appointment of Class Counsel, approve Plaintiff as Class Representative, and appoint Greenwald Davidson PLLC as Class Counsel.

Dated this 18th day of February, 2014.   */s/ Michael L. Greenwald*_____
**MICHAEL L. GREENWALD**
GREENWALD DAVIDSON PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@mgjdlaw.com

Counsel for Plaintiff and Proposed Class Counsel

**RONALD S. WEISS**
(P48762)
7035 Orchard Lake Road, Suite 600
West Bloomfield, MI 48322
RWeiss@MichiganLemonLaw.com
(248) 737-8000
(248) 737-8003 Fax

Local Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on February 18, 2014, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Michael L. Greenwald*
**MICHAEL L. GREENWALD**